Good morning, Your Honors. May it please the Court, my name is David Ratner. I represent Cassandra Tysman, and I would like to reserve five minutes of my time for rebuttal. You got it. Thank you. Your Honors, it's the plaintiff's position that the district court's decision, granting summary judgment, assumes that in February 2003, when she discovered that she had recovered the facts that would have alerted her to the acts committed by the phone company in the L.A. Police Department. However, as we're going to show, at the very least, that should have been a question of fact, and that should not have been the basis for granting summary judgment. If she knows she's been injured, does it matter if she doesn't know who all the wrongdoers are? That depends, Your Honor, and I believe what it depends on is the acts that each wrongdoer committed. If, in fact, each of the wrongdoers were participants in the same event, so, for example, in this case, if Pellicano were the wiretapper, if someone came along with Pellicano and held the ladder where he was climbing up to do the tapping, and someone else drove the truck that brought him there, they were all participants in the same event that caused the wiretapping. However, here we're saying that there were separate factual acts by the phone company and LAPD that they caused that would have given rise to separate causes of action against those two defendants. Where do I find that in your first amended complaint? Well, the first amended complaint may not be the most articulate of complaints that we could have written, but there within that are the basis of the claims against the phone company. Well, I'm looking for – I've read that complaint a couple times now, and I'm looking for factual allegations against the phone company and against the city which are distinct from the allegation made against Pellicano, which is that a wiretapping occurred and therefore your client suffered an injury. Is there anything in that complaint you can point me to that says – Well – that says there was some separate injury? We're not saying that there was a separate injury. There was an invasion of her privacy. The invasion of her privacy took place by the phone company, and we say it in the complaint when Malkin, when Wright, when Turner, employees of the phone company, accessed her confidential records. Isn't that the – I think what Judge Silverman asked, and I'm still not sure I've got an answer that gets me there, is what separate injury did your client suffer from the phone company's actions other than the ultimate wiretapping? What she suffered was an invasion of her privacy, that those records that she had, both the criminal database at the police department and the phone company confidential private records, are not allowed to be accessed only under official – either phone company or LAPD business. Let me try it one more time. Could you describe what I think you might characterize as a tort committed by these folks? Correct. My question is, what injury did your client suffer from their actions other than the ultimate wiretapping of her phone? The injury itself was their illegal access to her private records. She was entitled to keep those confidential. She was not – she did not say to the phone company employees, you can spread these records to the world. She didn't say that to the police department. And the very act itself of invading those records, we believe, gives rise to a separate cause of action. Am I wrong in thinking that – and I can't find it in the complaint – that what happened was that these records were made available to Mr. Pelicano, who then did a wiretap? That's correct. Any other injury that occurred from – put aside the second your characterization of it. I'm just trying to find out, did your client befall any other harm from the disclosure of these records to Mr. Pelicano? If one considers one's privacy sacrosanct, which I think we do in this country, then she did. Yes, that was the harm that she sustained. I mean, if you look at the cases that we cited, such as EFAB and FOX, the injury that each of those plaintiffs suffered was the same. In FOX, the injury the plaintiff suffered was a bad stomach operation. In EFAB, the injury the plaintiff suffered was an embezzlement of funds. But each of the separate defendants in each of those cases did separate things that caused that injury. So in EFAB, which we think is the case most similar to the case we have, the HUNT, the miscreant, was like Pelicano in this case. HUNT was the embezzler, and he was liable for the embezzlement. But the employment agency that sent HUNT to the plaintiff's place also contributed to the same act, which was the embezzlement, by failing to properly vet him and was negligent in doing that. Mr. Radner, I would like to ask a procedural question about the effect of the consolidation of these cases. And you don't really address that in your brief. We actually have one case by the time your motion for summary judgment was on tap. That's correct. Consolidation is usually determined by the order setting it up. It says, sometimes it says for pretrial matters, sometimes it says for all purposes. What does the order of consolidation say here? I have not looked at it. My understanding is that they were consolidated for all purposes. And because of that, we say that the telephone company and LAPD were brought in in time for the amendments of the Doe's in the first cause of action anyway, and there should have been a relation back to the timely filed first complaint. Can you explain that argument for me? Because I had some difficulty with it. The Doe's the actual attempt to amend the 2005 complaint occurs in 2010, am I right? Correct. So that would be more than three years after the fourth. No question. Okay. So is it your argument that the 2007 complaint amended the 2005 complaint? Well, here's the problem, that in 2007, we have Judge Cooper's order denying their motion for to dismiss and saying that the case was timely filed against LAPD and Pack Bell. No doubt it was, the 2007 complaint. And if it were timely filed, there would be no need to amend the Doe's. It was only when Judge Fischer, basically overruling Judge Cooper's decision and saying that Judge Cooper misinterpreted this Court's O'Connor case, said that no, no, summary judgment should be granted them, that we had the problem with them not being in there. And that occurred when? The second ruling? The second ruling was... And I don't think that, contrary to the arguments in the briefs, I'm not worried about law of the case here on this one, but when it occurred. It was February 27, 2013. So that's six years after the 2007 complaint is filed, right? That's true. And three years after you attempted to amend the 2005 complaint. That's true. So you couldn't have been relying in the interim on the initial judge's ruling that it was timely filed, because the second judge didn't say it wasn't timely filed until three years after you tried to amend the complaint. No, but, you know, statute of limitations issues came to mind and was something that we were concerned about because of what was going on in the case. You know, we thought, based on Judge Cooper's ruling, that we had a timely filed case. Had she denied or had she granted their motion, we could have then amended the DOE's to add the telephone company and LAPD. But we didn't. Well, her ruling was not a motion to dismiss. Is that right? Yes. At that point, she takes all the allegations as true. She assumes them to be true. Correct. It's a whole different ballgame when there's a motion for summary judgment filed, isn't it? It is and it isn't, because Judge Fisher did not rely on facts that were different from what was laid out in the complaint that Judge Cooper ruled on. There was nothing that occurred. There were no new facts to have changed the landscape when Judge Fisher made her motion, decided her motion. But isn't that an interlocutory decision? You don't challenge that. No. No. But the point here is that in response to Judge Hurwitz, we didn't take any steps to amend the DOE's, which we could have in a timely fashion, because we thought we had timely filed action. I know you're trying to set some time for rebuttal, but I want to just briefly, if you could, tell me, I don't think this DOE's relation back argument applies to your Federal claims. And so with respect to your Federal claims, how do you get past Rule 15? Assuming that the 2007 complaint is not timely filed.  We think that the complaint was timely filed. Right. I understand that. So I assume it wasn't, because otherwise we're not arguing about relation back. Right. I think under Rule 15, we do have a problem. I mean, you know, I'll concede that we didn't argue that in our brief. But the point of our argument is that plaintiff could not have discovered the involvement of the DOE. Right. That's your, I understand your core argument. I just want to make sure you don't have a separate Rule 15 argument that I missed. That's correct. I want to make sure you have some time. Thank you. Let me ask, yeah, please, how are you going to divide up your time? We're going to attempt to divide our time equally. I've worked out with counsel for the city of Los Angeles that I may go over just a little bit more. And you are asking us to be even. Would you mind putting seven minutes and 30 seconds on the clock for us, please? Hang on a second. Let's get. Seven thirty. It's an important 30 seconds. Put on eight for him and seven for the other guy. There you go. Okay. Thanks. Thank you. May it please the Court. Jason Frank for Pacific Bell Telephone Company. I'd first like to note that this argument that the plaintiff is not suing Pacific Bell for wiretapping, but is instead suing for the disclosure of her telephone records, is a new argument being raised for the first time on appeal. It is completely inconsistent with the record that was before the district court. As you noted from the complaint, you actually, if you look at the complaint, you will see that the plaintiff specifically alleges that PacBell employees were involved in intercepting the calls, monitoring, putting on devices to monitor calls, as well as disclosing the contents of those communications. So using his analogy, they were alleging that Mr. Turner and these employees were driving the truck to help implement the wiretapping. What I'm interested in with respect to PacBell is tell me why the plaintiff in this case should have known, within three years of the disclosure of the wiretapping was occurring, that your employees were actually in cahoots with Mr. Pelicano. Cahoots is a legal term. First, obviously, under the federal rules that, for the federal claims, you are on notice of your claim when you are aware of the injury and its physical cause. So she has alleged here that all of her injuries stem from the wiretapping. She suffered emotional distress from being wiretapped. She's not identified any separate injury. She was aware of the physical cause, which is that she was wiretapped. And so, therefore, the clock starts running, even though she may not know who all the violators are. And that is what the Ninth Circuit precedence says. That's what all the federal courts, frankly, that have looked at this issue have said, that when you are a victim of wiretapping, the fact that there may be other people that were in cahoots with the wiretapping, they may have hired somebody to conduct the wiretapping, they may have taken actions to help someone conduct a wiretapping, that that doesn't matter. What should someone in her position do when that happens? Well, someone should bring a lawsuit. Which she did. File the does. Timely, 2005. Conduct discovery. And determine who are all the known violators. And so, in this case, we know that within ten days after she's notified by the FBI that she has been wiretapped by Anthony Pelicano, the L.A. Times reports on a public hearing where the U.S. attorneys were trying to revoke Mr. Pelicano's bail and said, as reported in the L.A. Times, that Mr. Pelicano had sources at the telephone company that were assisting him with his wiretapping. We know also in 2004, her lawyers at the time, Dan Marino, was faxed, according to the faxed cover sheet, a Vanity Fair article, which goes into detail that Pac-Bell employees were giving information to Pelicano in order to conduct the wiretapping. Under California law. Suppose there were no Times article, no Vanity Fair article. Then what? Well, again, it is her burden to show that in order to rely on the discovery rule, she has to show that she would have been unable to discover her claims earlier with reasonable diligence. And the fact that those articles were in the public record, the fact that the U.S. attorney's office was making public statements in public court that Pac-Bell was potentially involved. So the discovery rule would apply, then, is what you're saying. No. The discovery rule only applies if she can show that she was unable to discover her claims earlier with reasonable diligence. So your rule is there's got to be an injury plus a newspaper article. No. My rule is that when you are aware of your injury, the clock starts running. That's why I said it wouldn't make any difference in your construct whether there's a Vanity Fair article or not. That is true. You're making two separate arguments. Absolutely. One is that the clock runs and you've got to go out and investigate. The other one was had she investigated, she would have known that your client was involved in this scheme. Absolutely. And the point here is that, number one, the clock starts running based on her knowledge of her injury. But even if that was not enough, she was certainly on notice enough to trigger her duty to investigate further. And under California law, and you'll see it in FOX, the Supreme Court case, they say that once you have a duty to investigate further, you are charged with information that could have been discovered from a public source, from sources open to investigation. And so, and then the plaintiff's burden, if they want to rely on the discovery rule, they have to come forward with facts to show that they would have been unable to discover the information that was available in the public record. I know you've split the time and maybe your colleague is going to do this. Could you address the Doe issue? Yes. It's a little strange here, and Judge Vincent mentioned it. We have a 2005 complaint and a 2007 complaint, and they're consolidated. I haven't seen the consolidation order either. I can't find it in the record. Although I know the judge later dismisses one complaint and not the other. So I don't know how closely they're consolidated. But why doesn't the 2007 complaint, in effect, amend the 2005 complaint? Let me give you the full timeline on that. First, she files her complaint in state court naming Doe's in March 2004. Under the California statute, once you name a Doe, you have three years to determine the identity. She files a federal complaint in 2007 against other parties. Sorry, she files a federal complaint in 2005. Against El Tonno and other parties not now involved. Not Pacific Bell. She files a separate lawsuit against Pac Bell in 2007. We suspect that one of the reasons why she did that is because she knew that she would be un ‑‑ she would be barred by the three-year rule. So your argument is that the three years run from the 2004 state court complaint, not from the 2005 federal court? I believe it would have. If she would have attempted to do a Doe amendment then, that's certainly the argument that we would have made. Having done the February 27th, filed a separate lawsuit on February 27th, the motion to dismiss, didn't come out until I believe it's May of 2009. She then waits another four years in 2013 to attempt to amend her 2005 action to add Pac Bell as a Doe to that action. And there is just no authority for the proposition that the filing of a separate lawsuit can somehow relate back to ‑‑  An earlier lawsuit. A consolidated case that I've been able to find. That's ‑‑ I have not found any case that deals with that situation. So what is the consolidation on this? And you haven't addressed it, they haven't addressed it. It's sort of up in the air. You know, it was frankly a very strange situation. The court in chambers said, can we just consolidate these cases for discovery purposes? We said yes. And she issued a church order saying that they're consolidated. That is why nobody has discussed this in the record. Because it wasn't contemplated by anybody that somehow agreeing to consolidation would somehow now mean that the case relates back to the 2005. Did the judge ask for consent to consolidate? She didn't. She just did it on her own. It was done basically as a means of convenience. She did not. She did not. She did not ask for consent. She just did it. She just did it. Thank you very much. Thank you. For the city. Cal Johansson, deputy city attorney on behalf of the city of Los Angeles. Good morning. I have a question for you before you get started here. Sure. And it's different than the one I asked Pat Bell. It seems to me it would be intuitive that if somebody had wiretapped my phone, the phone company might be involved. Why would it be intuitive that police from the city would be involved? Why should Mr. Heisman have known within this three-year period that you had rogue police officers, rogue police employees involved in this scheme? Well, I hope my response doesn't appear to be a dodge of your question. I hope my response doesn't appear to be a dodge of your question. If it does, I'll tell you. Okay. I think the way that we would approach it is it really determines the theory of the case that the plaintiff was advancing in the district court as to how it should be viewed, whether the city of Los Angeles and its sergeant should be involved in wiretapping. And the reason I say that is I cite in my brief on page 13 that in response to our motion for summary judgment, the plaintiffs say that they can prove a substantive violation of Section 47 U.S.C. 605, which is the only claim against the city of Los Angeles, based on Arneson's assistance of Pacific Bell employees in violating the statute and based on his overall assistance in procuring the wiretap. So it's the theory that the plaintiff was advancing. So you're making a single injury argument. Your argument is that because she knew of the injury, then she had an obligation within the limitations period to discover. How that took place. But there's nothing intuitive about this. With Pac Bell, it's sort of easier for me. And I don't know how you can wiretap, because I'm not a wiretapper, without at least some assistance in the phone company. But it's harder for me to understand why anybody would think the police were involved. Well, I don't know if wiretapping is something that is intuitive. It seems like it's a very detailed undertaking and that not every wiretap is going to be the same. And that would be my response. You have to be aware that when one's involved in a wiretapping, it's an illegal enterprise, and how one gets to that may be different in each case. Am I right in assuming, I was listening to your opponent, that because the only claim against the city is a federal claim, that our argument about does just doesn't make any difference with respect to you? You know, I really hadn't contemplated the does. The does are California law. And our cases have said that when one brings a California law claim, I'm not sure the cases are right, but they say it. We import the does procedure in California. But with respect to a federal claim, the does, we deal with Rule 15, don't we, when if a new defendant is added to a complaint, we look back under Rule 15C to see whether or not that person knew or should have known at the time that, but for a mistake, he would have been named. Is there anything here to suggest that? You know, I have to be candid with the Court. I haven't really analyzed or anticipated this argument. I would say that. Nobody briefed it, so it's not surprising that you didn't anticipate it. I read your brief and it dealt a lot with the does issues, but it seems to me the does issues don't pertain to you at all, do they? That's the position that I would take now. So your argument is that when the complaint was filed in 2007, the statute of limitations had already won. Correct. Correct. We've offered two arguments, one that the statute of limitations had run, and ours is different than Pacific Bell. I mean, we certainly joined their argument that there was an earlier accrual date, but we also made a separate argument that there's a one-year statute of limitations as to. Well, what is the statute of limitations? That seems to be an unanswered question. Direct TV discusses it in context of the Piracy Act, which talks about pirating cable TV signals, which doesn't apply to you in the least. So what would be the analogous state statute if we're going to try to find one, or analogous federal statute? If I could, I'm going to try and persuade you that Direct TV does apply to this section. And let me tell you why. On page 489, I'm sorry, 849 of the official report on Direct TV, the Court not only looks at the sections of the Federal Wiretap Act and the Federal – I'm sorry, the Communications Act and the Piracy Act as to those sections when they were amended. You're saying 841? 849 of the official reports on Direct TV. 849 is the page you're looking at? Yes. All right. And the original statutes, the Federal Communications Act and the Piracy Act, were amended to include cable TV protection. But they did have – before they were amended, they both had statutes that covered certain areas. 605A is the statute provision, which plaintiff claims that Arneson and I guess therefore the city violated. Direct TV did specifically address those earlier provisions that didn't deal with piracy of TV, and that's on page 849, and I'll quote from the decision. Both statutes prohibit unauthorized signal transmission as well as reception. It has a footnote 5. It goes on to cite 47 U.S.C. section 605A, the statute at issue here, and Cal Penal Code section 593 D.C. It goes on to say in footnote 5, section 605A, which is at issue here, provides that no one transmitting or assessing – assisting or transmitting a communication covered by the statute shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels. Similarly, the Privacy Act prohibits the transmission or broadcasting of any program or other service not intended to be transmitted or broadcast. So what I would say is Direct TV specifically did address that portion of the statutes that the city was claimed to have violated and which plaintiffs says should be used for the purposes of statute of limitations analysis. So our argument is Direct TV did address not just part of the statute but all of the statute and find that the one-year statute of limitations was more appropriate. Well, the district judge said even assuming there's a two-year statute, so what would that one be if there's a two-year analogous statute? I'm assuming that that would be the Piracy Act. That would be the State Piracy Act. I'm assuming that that is what they're referring to, assuming a two-year statute of limitations. We disagree respectfully with the district court that there was a two-year statute of limitations. We think Direct TV is clear that there's a one-year statute of limitations. But you argue that even if there were three, the statute was not met. We're arguing as many arguments as we think. No, I understand. I just want to so your argument doesn't depend on us accepting your position that it's a one-year statute of limitations. We would be happy if the court would accept. Of course, you'd be happy if you won. I'm just trying to find out what you're arguing. I'm arguing that we believe that there's an earlier accrual date, as stated by Pacific Bell, but we're also saying that if the court finds that there's a later accrual date, the accrual date that plaintiff unequivocally agrees to, that applying a one-year statute of limitation. Thank you. Mr. Render, back to you. I've got about three minutes and change. Thank you. Thank you, Your Honor. In 2003, if the plaintiff sued the phone company and the police department, she would have had no factual allegations that she could have put in the complaint. She wouldn't have known the names of any of the employees. She wouldn't have known what the employees did. And she wouldn't have known how that contributed to any of her injuries. Nor by looking at any media, whether it's the L.A. Times or Vanity Fair, could she have discovered that. In addition, she couldn't have found that out in discovery in the lawsuit. Pelicano wouldn't have testified. He would have taken the Fifth. Mazri wouldn't have testified. He would have taken the Fifth. You ask L.A., any of your cops involved in this, what would the answer have been? No. You ask the phone company, any of your people involved in this, answer would have been no. She could not until 2006 have established any facts that would have either survived the 12B6 motion or a motion for summary judgment by either of those defendants in the case. And the three little articles in the news media were not enough to alert her. She, if you look at the other cases, whether it's the Nelson case or the case involving the stolen embryos, the news media surrounding those particular actions was far and away greater than any of the news media surrounding this. Automatically, when you talk about wiretapping, you're talking about the phone company. If you're talking about wiretapping of your telephone, you're talking about the telephone company, aren't you? Well, that's true in a general sense. But remember, she had called the phone company in 2000 and 2001 and asked them to check her line and see if she was being wiretapped. And she got a response that your line's clear. So even though she had been wiretapped during that period of time and even though she asked the telephone company for information concerning it, she was told, no, you're not being wiretapped at all. Isn't it true that there are different ways to actually effect a wiretap? Now you're asking something that's a little beyond my expertise, Your Honor. But from what we understand from the indictment and what we understand from the criminal case against Pelicano, he and his associate Kurchakian developed a unique way to wiretap people and didn't just use it on plaintiff. He used it on a whole bunch of celebrities and with a whole bunch of lawyers. And perhaps the uniqueness of the method that Pelicano used made it impossible to As far as the Vanity Fair article goes, Mr. Marino, number one, wasn't her lawyer at the time, and number two, denies ever seeing it and denies ever reading it. Okay. Finish your sentence and then we'll say goodbye. And as far as the one, two or three year statute of limitations, we think the most analogous statute under California law would be the Invasion of Privacy Act, which Judge Cooper ruled was preempted by the ECPA, and therefore the most analogous law to 605A would be the ECPA with the two year statute. Thank you. Gentlemen, thank you, too. The case just argued is submitted. Mr. Frank, you're headed back downtown, is that right? Please tell Judge Marmaro we very much appreciate his courtesy. Thank you, counsel. We'll stand and recess on this case.
judges: Vinson, Silverman, Hurwitz